DISTRICT OF OREGON
FILED
October 01, 2026
Clerk, U.S. Bankruptcy Court

Below is an opinion of the court.

TERESA H. PEARSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Marvissa Etasha Cotton,<br><br>Debtor. | Case No. 26-30793-thp7<br><br>MEMORANDUM DECISION[1] |

**Introduction**

This matter came before the court on the chapter 7 trustee's objection to debtor's claim of exemption under ORS 18.345(1)(j).[2] Debtor filed a response to the objection.[3] The court held a hearing at which the trustee and the debtor each represented herself. Although the hearing was a nonevidentiary hearing, the parties agreed that the documents attached to debtor's response were the relevant documents for the court to consider in evaluating debtor's claim of exemption and that the issue could be decided based on the applicable law and those documents.

The court has reviewed the record and files of this case and considered the arguments made by the parties. For the reasons set forth below, the court sustains the trustee's objection.

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.
[2] Trustee's Objection to Claimed Exemptions, ECF No. 27, filed June 18, 2026 (the "Objection").
[3] Debtor's Response to Trustee's Objection to Claimed Exemption, ECF No. 29, filed July 1, 2026 (the "Response").

**Procedural History**

The debtor filed her chapter 7 bankruptcy case on March 9, 2026.[4] On her amended Schedule A/B, debtor scheduled the following asset in response to question 34: "Pending allocation under Los Angeles County AB 218 child abuse settlement (MacLaren Hall matter.) Individual award and payment date undetermined" with an unknown value.[5] On her amended Schedule C, the debtor claimed an exemption for 100% of the fair market value of this asset pursuant to ORS 18.345(i)(j).[6]

The trustee objected to this claim of exemption, asserting that the settlement "is not an award under a crime victim reparation law as required by ORS 18.345(1)(j)."[7] The debtor responded, asserting that California's Assembly Bill No. 218 is a crime victim reparation law that falls within the protections of ORS 18.345(1)(j).[8]

**Facts**

The debtor asserts, and the trustee does not dispute, the following facts: The debtor was housed at MacLaren Hall in Los Angeles County as a child after her parents lost custody.[9] The debtor is the plaintiff in litigation asserting claims for childhood sexual abuse occurring while she was in the care, custody, placement, or supervision of Los Angeles County.[10] The debtor is one of many claimants asserting similar claims against Los Angeles County.[11] The debtor's lawsuit was made possible because California's Assembly Bill No. 218 extended the statute of limitations for parties to recover damages suffered as a result of childhood sexual assault.[12]

The debtor, along with other plaintiffs, has reached a settlement of her claims.[13] Under the settlement, Los Angeles County will pay the total amount of $4 billion into a qualified

---

[4] Petition, Schedules, and Statement of Financial Affairs, ECF No. 1, filed Mar. 9, 2026.
[5] Amended Schedule A/B, ECF No. 25, filed June 11, 2026, p. 8.
[6] Amended Schedule C, ECF No. 25, filed June 11, 2026, p. 3.
[7] Objection, p. 2.
[8] Response, pp. 2-3.
[9] *Id.*
[10] *Id.*, Exh. 5, p. 1.
[11] *Id.*, Exh. 2, p. 2, Exh. 3, p. 3.
[12] Assembly Bill No. 218, section 1(a).
[13] Response, Exh. 5.

settlement fund account.[14] A court-appointed claims administrator will allocate the fund among all the settling plaintiffs.[15] Debtor has agreed to accept the amount that is determined by the claims administrator.[16] As of the date of the hearing on the objection, that amount had not yet been determined.

The debtor's settlement agreement describes the payments to be made under the settlement as follows:

> **25.** **<u>Compensation for Injuries</u>**: The payments under this Settlement Agreement are deemed as compensation on account of personal injury and physical sickness of the Plaintiff arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. ***The payments under this Settlement Agreement are not intended by the Parties to constitute punitive damages, lost wages, or economic damages, in part or in whole.*** In this regard, Plaintiff hereby expressly releases and holds the Settling Defendants and the other Defendant Releasees harmless from any liability arising from Plaintiffs expressed intent, characterization, or tax treatment of this Settlement Agreement. ***In addition, the Parties agree that in any subsequent trial between any of the Plaintiffs and any Non-Settling Defendant, the Non-Settling Defendant shall not be bound by the characterization of the settlement funds referred to herein, and the trial court or jury will be free to determine the allocation between the economic damages and non-economic damages compensated for by the settlement monies paid pursuant to this Settlement Agreement.*** Plaintiff, for and on behalf of himself/herself/theirself, his/her/their spouse (if any), and his/her/their successors-in-interest, hereby waives any and all claims or causes of action that may have arisen to date against any and all Settling Defendants and the other Defendant Releasees for punitive, exemplary, loss of earnings, and/or economic damages of any type arising from, connected with, or in any way relating to the damages or injuries alleged in the Action.[17]

In other words, for purposes of this settlement, the damages as between the settling parties are agreed to be non-economic damages, although the debtor has reserved the right to assert some of the damages are economic damages in any claims against any non-settling defendant. The record does not indicate that any such non-settling defendant exists.

---

[14] *Id.*, Exh. 5, p. 1, ¶ 4, p. 2, ¶ 7.
[15] *Id.*, Exh. 5, p. 1, ¶ 4.
[16] *Id.*
[17] Response, p. 40 (Settlement Agreement p. 7 of 10) (emphasis added).

## **Analysis**

Oregon law provides that the "debtor's right to receive, or property that is traceable to, an award under any crime victim reparation law"[18] is exempt. This case presents the question of whether payment pursuant to debtor's settlement agreement is an award under a crime victim reparation law. That in turn requires an examination of what qualifies as an award under a crime victim reparation law.

Under Oregon law, to interpret a statute, the court must look first to the text and context of the statute.[19] Next, the court may consider any legislative history the parties may proffer, though textual ambiguity in the statute is not a prerequisite to consulting the legislative history.[20] However, the most persuasive evidence of the legislature's intent is the language of the statute itself.[21] Finally, if the legislature's intent remains unclear, the court may resort to general maxims of statutory construction.[22] It is appropriate to consider the statutory context of how the Oregon Legislature writes its exemption laws when determining whether a specific statute creates an exemption.[23]

In her Response, the debtor asserts that the exemption provided by ORS 18.345(1)(j) is not limited to recoveries under Oregon's own crime victim reparation laws but can encompass an award under a California crime victim reparation law. The court agrees. The plain language of the statute says that an exemption is provided under "any" crime victim reparation law and does not limit the exemption to awards under Oregon's crime victim reparation laws. A California crime victim reparation law would comfortably fall under the term "any" crime victim reparation law.

---

[18] ORS 18.345(1)(j).
[19] *State v. Gaines*, 346 Or. 160, 171-72, 206 P.3d 1042, 1050-51 (2009).
[20] *Id.* In this case, neither party provided any briefing or any legislative history, and the court has independently examined the materials discussed herein.
[21] *Gaines*, 346 Or. at 171, 206 P.3d at 1050.
[22] *Id.*
[23] *See Yaden v. Robinson (In re Robinson)*, 241 B.R. 447, 448-49 (9th Cir. BAP 1999) (relying on context and assembling a "three-piece puzzle" of three different Oregon statutes to determine whether one of them provides for a particular exemption).

The more difficult question is: what is a crime victim reparation law? Although ORS 18.005 defines many of the terms used in Chapter 18, the term "crime victim reparation law," or any portion of that phrase, is not among them. Therefore, the court has looked to existing case law and the legislative history and context of this statute.

The operative language in ORS 18.345(1)(j) was originally enacted in 1981.[24] A few years before that, in 1976, the Oregon Supreme Court defined the term "reparation," which was used in what was then ORS 137.540(10). At that time, the Oregon Supreme Court distinguished between restitution and reparations, defining each of those terms as follows:

> "We construe the term 'restitution' to mean the return of a sum of money, an object, or the value of an object which a defendant wrongfully obtained in the course of committing the crime. 'Reparation' is a somewhat broader term which has been defined as '(a) repairing or being repaired; restoration to good condition.' We think it is consistent with the concept of 'repairing' to construe 'reparation' as encompassing only reimbursement for the victim's liquidated or easily measurable damages resulting from the charged offense. This construction would embrace medical expenses, wages actually (not prospectively) lost, and reimbursement for easily measurable property damage."[25]

In short, *Stalheim* limited those remedies to the return of wrongfully obtained property or compensation for readily measurable losses, damages that are economic in nature.

While instructive, it is unlikely that this definition of "reparation" is dispositive in evaluating the meaning of ORS 18.345(1)(j) for two reasons. First, in *Stalheim*, the Supreme Court was interpreting the term "reparation" as a matter of criminal procedure, not as a matter of civil exemption law.[26] Second, shortly after this decision, in 1977 the Oregon Legislature amended ORS chapter 137 to reverse the *Stalheim* decision (at least to the extent that the statute limited recovery to the direct victim of a criminal offense, and apparently for the purpose of

---

[24] 1981 Or. Laws. 1456, c. 903 § 2 (House Bill 2506). The statute was originally codified at ORS 23.160(j)(A).

[25] *State v. Stalheim*, 275 Or. 683, 687-88, 552 P.2d 829, 832 (1976) (citing Webster's New 20th Century Dictionary (Unabridged Second Edition) for the definition of "reparation.") (footnotes omitted), superseded by statute as noted in *State v. Barkley*, 315 Or. 420, 434-36, 846 P.2d 390, 398-99 (1993).

[26] *Stalheim*, 275 Or. at 687-90, 552 P. 2d at 831-33.

allowing recovery for the victim's family and other injured third parties).[27] The amendments deleted the term "reparation" from the statute in favor of a broader definition of the term "restitution."[28] The statutory amendments to ORS chapter 137, however, continued to limit recovery to pecuniary (economic) damages.[29]

In 1977, the Oregon Legislature also adopted provisions for the state to compensate crime victims.[30] The types of losses that were compensable were economic—medical and hospital expenses, loss of earnings, rehabilitation costs, burial expenses, and loss of support to dependents, up to specified amounts.[31] Compensable losses did not include pain and suffering or property damage.[32]

In 1978, Congress adopted the Bankruptcy Code.[33] Prior to adoption of the Bankruptcy Code, exemptions were generally invoked under state law and non-bankruptcy federal law.[34] The Bankruptcy Code changed that, and allowed debtors to assert exemptions established under the federal Bankruptcy Code, but only if the applicable state where debtor was domiciled allowed the use of those federal Bankruptcy Code exemptions.[35] This provision of the Bankruptcy Code became effective on October 1, 1979.[36]

The 1981 regular Oregon legislative session was the first time that the Oregon Legislature met in regular session after the Bankruptcy Code became effective. House Bill 2506, which contained the substance of the language presently found in ORS 18.345(1)(j), was introduced in the 1981 regular session at the request of the Oregon Bankers Association.[37] From

[27] *Barkley*, 315 Or. at 434-36, 846 P.2d at 398-99.
[28] Compare ORS 137.540(10) (1975) with ORS 137.540(j) (1977) and ORS 137.106 (1977).
[29] ORS 137.103(2) and (3) (1977) and ORS 137.106(1) (1977).
[30] ORS Chapter 147 (1977).
[31] ORS 147.035(1) (1977).
[32] ORS 147.035(2) (1977).
[33] Public Law 95-598 (Nov. 6, 1978).
[34] Robert M. Ujevich, Sectional Analysis of the Major Provisions and Principal Operative Chapters of the Bankruptcy Reform Act of 1978, (Public Law 95-598, 92 Stat. 2549, Codified as Title 11 of the United States Code), Congressional Research Service Report No. 80-225 A 744/23 (Dec. 23, 1980), pp. 63-65.
[35] 11 U.S.C. § 522(b)(1) (1978).
[36] Public Law 95-598 (Nov. 6, 1978), § 402(a).
[37] Minutes of the House Committee on Judiciary, Jan. 28, 1981, p. 4.

the plain text of the bill it appears that there were two purposes for House Bill 2506: (1) to make explicit that residents of Oregon were not authorized to use the exemptions established under the federal Bankruptcy Code, and (2) to update and revise the Oregon state law exemptions. Section 1 of the bill directly addressed the first purpose.[38] The remainder of the bill added several new exemptions[39] and increased the amount of many existing Oregon state law exemptions.[40] Three of the new exemptions were patterned on Bankruptcy Code exemptions: the new exemptions for awards under any crime victim reparation law, payments on account of personal bodily injury, and payments on account of loss of future earnings.[41] The language of House Bill 2506, providing an exemption for "[t]he debtor's right to receive, or property that is traceable to: (A) an award under any crime victim reparation act," was virtually identical to the language of the new Bankruptcy Code, which provided an exemption for "[t]he debtor's right to receive, or property that is traceable to—(A) an award under a crime victim's reparation law[.]" The close correspondence between these provisions supports consulting the federal exemption's origins when interpreting the Oregon provision.

Given that history and language, it is useful to consider what a "crime victim's reparation law" meant under the Bankruptcy Code. "The federal exemptions found in section 522 of the Bankruptcy Code were largely derived from the Uniform Exemptions Act."[42] The Bankruptcy Code adopted the exemption for rights under a crime victims reparation law from the section 5(6) of the Uniform Exemptions Act.[43] That exemption stated in relevant part that "[a]n individual is entitled to exemption of the following property: . . . (6) an award under a crime

---

[38] 1981 Or. Laws. 1456, c. 903 § 1.
[39] 1981 Or. Laws. 1456, c. 903 § 2.
[40] 1981 Or. Laws. 1456, c. 903 §§ 2-9.
[41] Elizabeth L. Perris and Linda Johannsen, *Exemptions*, Creditors' Rights and Remedies (Oregon CLE 2002 and Supp. 2006), § 9.27.
[42] Gary M. Keenan, Comment, *Bankruptcy - A Comparison of State and Federal Exemptions*, 10 N.M. L. Rev. 431 (1980), p. 432.
[43] Table of Derivation of H.R. 8200, Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, House of Representatives, Ninety-Fifth Congress, First Session (July 1977), p. 12.

victim's reparation act."[44] In the commentary to Section 5(6) of the Uniform Exemptions Act, the drafters the Uniform Exemptions Act, in turn, referred to the Uniform Crime Victim Reparations Act to determine what type of award would qualify for the exemption. Comment number 6 notes that "[t]he exemption provided by paragraph (6) covers an award under a statute like the Uniform Crime Victim's Reparation Act."[45] Based on this history, it is apparent that the drafters of the Bankruptcy Code intended to provide an exemption for awards of the type described in the Uniform Crime Victim's Reparation Act.

Section 2 of the Uniform Crime Victim's Reparation Act provides for awards of reparations for economic loss, but not for non-economic detriment.[46] Those terms were defined in Section 1(g) of that act as follows:

> (g) "Economic loss" means economic detriment consisting only of allowable expense, work loss, replacement services loss, and, if injury causes death, dependent's economic loss and dependent's replacement services loss. Noneconomic detriment is not loss. However, economic detriment is loss although caused by pain and suffering or physical impairment.
>
> > (1) "Allowable expense" means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, rehabilitation, rehabilitative occupational training, and other remedial treatment and care. The term includes a total charge not in excess of $500 for expenses in any way related to funeral, cremation, and burial. It does not include that portion of a charge for a room in a hospital, clinic, convalescent or nursing home, or any other institution engaged in providing nursing care and related services, in excess of a reasonable and customary charge, for semi-private accommodations, unless other accommodations are medically required.
> >
> > (2) "Work loss" means loss of income from work the injured person would have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by

---

[44] Unif. Exemptions Act § 5(6) (Unif. Law Comm'n, amended 1979).
[45] Unif. Exemptions Act § 5 cmt. 6 (Unif. Law Comm'n, amended 1979).
[46] Uniform Crime Victims Reparations Act, § 2, made part of the record in Hearings before the Subcommittee on Criminal Justice of the Committee on the Judiciary House of Representatives, Ninety-Fourth Congress, First and Second Sessions on Victims of Crime Compensation Legislation, Serial No. 39 (1975 and 1976), p. 53.

him or by income he would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake.

(3) "Replacement services loss" means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the injured person would have performed, not for income but for the benefit of himself or his family, if he had not been injured.

(4) "Dependent's economic loss" means loss after decedent's death of contributions of things of economic value to his dependents, not including services they would have received from the decedent if he had not suffered the fatal injury, less expenses of the dependents avoided by reason of decedent's death.

(5) "Dependent's replacement services loss" means loss reasonably incurred by dependents after decedent's death in obtaining ordinary and necessary service in lieu of those the decedent would have performed for their benefit if he had not suffered the fatal injury, less expenses of the dependents avoided by reason of decedent's death and not subtracted in calculating dependent's economic loss.

(h) "Non-economic detriment" means pain, suffering, inconvenience, physical impairment, and other non-pecuniary damage.[47]

Based on its review of the history set forth above, the court concludes that an exemption for an award under a crime victim reparation act is limited to awards of economic damages.

In this case, the Settlement Agreement is explicit that debtor's award is not for economic damages. Although debtor's settlement agreement does not preclude her from establishing that the award is a recovery for economic damages in claims against any non-settling defendant, there is nothing in this record that such a non-settling defendant exists or that the plaintiff has any economic damages. Because the exemption for awards under a crime victims reparation act covers only economic damages, and the award under the Settlement Agreement is not for

[47] Uniform Crime Victims Reparations Act, § 1, made part of the record in Hearings before the Subcommittee on Criminal Justice of the Committee on the Judiciary House of Representatives, Ninety-Fourth Congress, First and Second Sessions on Victims of Crime Compensation Legislation, Serial No. 39 (1975 and 1976), p. 52.

economic damages, the debtor cannot claim an exemption in the award under her Settlement Agreement under 11 U.S.C. § 522(d)(11)(A).[48]

**Conclusion**

For the reasons set forth above, the court concludes that the debtor cannot claim an exemption for the proceeds of the settlement under ORS 18.345(1)(j). The court will enter an order sustaining the trustee's objection. The order will be without prejudice to the debtor amending her exemptions to claim any other appropriate exemption in the settlement proceeds.

# # #

[48] The court makes no ruling regarding whether this award may qualify for other exemptions, such as those for payments for personal injury or any available "wildcard" exemption, should debtor choose to amend her claims of exemption.